UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

    v.

DOUGLAS D. BENNS,

      Defendant.

No. 1:20CR00133

**MOTION FOR SENTENCE MODIFICATION
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)**

Defendant Douglas Benns, through counsel, respectfully asks this Court to modify his sentence to time served, pursuant to 18 U.S.C. § 3582(c)(1)(A).  Mr. Benns makes this request in light of the extraordinary and compelling circumstances of his medical deterioration while in detention.  The sentencing factors of 18 U.S.C. § 3553(a) further support release, and a modification would be in line with applicable sentencing guidelines policy statements.  In support, he states as follows:

## I.    INTRODUCTION

1.    On August 1, 2022, this Court entered Judgment sentencing Mr. Benns to four months in Bureau of Prisons ("BOP") custody.  Dkt. No. 65.

2.      On October 30, 2022, Mr. Benns reported to BOP custody at FCI Morgantown.

3.      On November 18, 2022, counsel for Mr. Benns submitted a § 3582(c)(1)(A) sentence modification request to the Warden of FCI Morgantown. The Warden responded on December 12, 2022, stating that she had not made a final decision on the request.   *See* 12-12-22 Letter from M.J. Bayless, Warden FCI Morgantown, Ex. A.  It has been approximately 35 days since submission of Mr. Benns' request to the Warden, and Mr. Benns' condition has continued to deteriorate.

## II.    BACKGROUND

4.      Mr. Benns is 60 years old.

5.      On August 1, 2022, this Court sentenced him to 4 months in the custody of BOP.  Dkt. No. 65.

6.      Mr. Benns' release date is February 27, 2023.  *See* BOP Inmate Finder printout, Ex. B.  To date, he has served 53 out of 120 days of his sentence.

7.      Prior to October 30, 2022, Mr. Benns requested – and the Court ultimately granted – a motion to extend his self surrender date, because his health on the eve of the surrender date was deteriorating.  Since the order granting the extension came through the ECF on November 1, 2022, Mr. Benns had already reported on the previously-set date of October 30.

8.     Mr. Benns went to the prison hospital, via emergency squad, within 24 hours of surrender to FCI Morgantown.[1]   He stayed there approximately five days before going to his cell.  While the precise timeline of hospitalizations would be best shown by his records, Mr. Benns estimates that he has spent at least 34 days in the hospital since he surrendered.

9.     Of greatest concern, Mr. Benns has had to go on kidney dialysis since he's been in BOP custody, and he has intermittently lost his ability to walk due to the change in care protocols and hospitalizations.  Indeed, he is somewhat hazy regarding his issues, because he has passed large chunks of time unconscious or semi-conscious.

10.     Mr. Benns is currently on furlough, receiving treatment at a non-BOP facility over 90 minutes from FCI Morgantown (Counsel cannot specify the location, because BOP asked Mr. Benns not to tell counsel his location).  Mr. Benns' understanding is that, in light of his serious medical needs, BOP may keep him on furlough at the facility until his release.  He further understands that once he hits 2/3 of his sentence (around January 18, 2023) they are considering changing his custody status.

---

[1] Mr. Benns has asked BOP to provide defense counsel with his medical records during since reporting to FCI Morgantown.  As of filing, counsel has not received those records, and therefore this motion relies upon counsel's conversation with Mr. Benns.

## III. ARGUMENT

### A. Legal Standard

The Sixth Circuit holds that a § 3582(c)(1)(A) motion involves a three-step inquiry:

> Prisoners still must show that "extraordinary and compelling" reasons warrant the reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Courts must confirm that any sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." . . . § 3582(c)(1)(A). And defendants must persuade the district judge to grant the motion after the court considers the § 3553(a) factors.

*United States v. McCall*, --- F.4th ----, No. 21-3400, 2022 WL 17843865, at *4 (6th Cir. Dec. 22, 2022) (internal citations omitted).

Mr. Benns will address each in turn.

### B. Extraordinary and Compelling Circumstances

Mr. Benns' medical problems constitute extraordinary and compelling circumstances that warrant modification of his sentence under 18 U.S.C. § 3582(c)(1)(A). He recognizes that this Court has already considered his pre-incarceration medical challenges. His myriad and compounding issues were a central component of Mr. Benns' sentencing submissions and hearing. *See e.g.*, Dkt. Nos. 59, 63.

The extraordinary and compelling medical issues giving rise to this motion did not exist at the time of Mr. Benns' August sentencing.  Mr. Benns did not need kidney dialysis in August when sentenced.  *See* Dkt. No. 63 at 18 (list of diagnoses not including kidney failure).  The kidney failure is a new condition, which only came about in BOP's care.  Further, Mr. Benns' poor circulation was being managed in August, so he was able to walk with the aid of a cane.  Since getting to BOP, though, Mr. Benns has intermittently lost his ability to walk.  He has had to spend time in rehab just re-learning to walk.

The BOP apparently recognizes that Mr. Benns' condition is severe.  The clearest demonstration of BOP's recognition is that they sent him out of BOP custody because BOP lacks the capacity to properly care for him.  While BOP will try to meet its charge to keep him alive until February, there is no doubt that Mr. Benns has deteriorated to a significant extent since getting to FCI Morgantown.

If Mr. Benns leaves the treatment facility before his out date, FCI Morgantown will struggle to provide sufficient facilities for him.  In the limited and intermittent days that Mr. Benns has spent actually at FCI Morgantown, he has been forced to sleep in a wheelchair.  Most of the times he has gone to the hospital, it has been through the ER, instead of through planned and expected processes.  FCI Morgantown's approach, though well-intentioned, is less of a plan for care, than it is an *ad hoc* battle to keep him alive last until Mr. Benns' out date.

At his sentencing, the Court considered the mere *risk* of Mr. Benns deteriorating if he got sent to BOP custody. Now, Mr. Benns submits this motion because of the extraordinary and compelling *facts* of his deterioration in BOP custody.

### C. Release Is Warranted under 18 U.S.C. § 3553(a) Factors

The § 3553(a) factors weigh in favor of modifying Mr. Benns' sentence. He only has a few weeks left until the January 18 date when BOP will apparently change his status upon hitting 2/3 of his time served. And, wherever he is, the next several weeks will likely be spent in hospital, not in a prison. So the question is not whether his *incarceration* will continue. His incarceration is, for all intents and purposes, complete. The question is whether the BOP doctor or Mr. Benns' doctor will manage his care for the next few weeks. Since that care has to continue once he gets out, it only makes sense for Mr. Benns' doctor to take charge of his health without delay. Hopefully such a change could arrest the deterioration.

These considerations weigh in favor of immediate release under 18 U.S.C. § 3553(a)(2)(A), which aims for sentences to promote respect for the law and impose just punishment. Admitting that Mr. Benns has not been in custody for long, Mr. Benns has already paid a serious punishment for his crime: His lost his kidney function and went on dialysis. BOP's prior inability to keep him healthy promotes

little confidence that they will do better going forward.  He should not have to endure further failures by BOP, particularly since he is so near to getting out.

Having BOP continue to manage Mr. Benns' care in the face of such swift and serious deterioration would not promote respect for the law.  Indeed, it might undermine respect for the law.  Neither Congress, nor the general public, would think that BOP should maintain custody of a nonviolent offender solely for the purpose making BOP remotely manage his inpatient care for a few weeks.  This sentiment would be compounded by the fact that BOP has already put Mr. Benns on furlough.  He is not in BOP custody because his health problems are too severe. Mr. Benns' request, then, is simply to ratify BOP's assessment that his medical condition outstrips their ability to care for him.

The § 3553(a)(2)(C) considerations, protecting the public, also weigh in favor of modifying Mr. Benns' sentence.  Over the course of the next two months (the amount of time remaining on Mr. Benns' sentence at the absolute longest), Mr. Benns poses no risk to the public, because he will be in the hospital.  Even if he were inclined to commit crimes – he is not – he would not have the opportunity. Mr. Benns will spend the next months focusing on health, likely in a hospital.

Release would also pose no issues for Mr. Benns under consideration of § 3553(a)(2)(D), deterrence. For anybody watching, Mr. Benns' sentence would not be a deterrent, because the context is too unique.  Mr. Benns' has so little time left,

and such extraordinary health concerns, that his case's result would not factor into anybody's thinking, deterrent or otherwise.

### D. Release is Consistent with Applicable Policy Statements Issued by the Sentencing Commission

Mr. Benns meets the "extraordinary and compelling" definition of Application Note 1(A)(ii)(I). That provision reads:

> [That] . . . extraordinary and compelling reasons exist under any of the circumstances set forth below: . . . (A) Medical Condition of the Defendant . . . (ii) The defendant is . . . (I) suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, note 1(A)(ii)(I). In this case, Mr. Benns has a serious physical and medical condition that substantially diminishes his ability to provide self-care within the correctional facility. His kidney failure and flagging mobility meet those standards. And, while BOP will try to manage it over the next few weeks, there is no chance the issues will be resolved before the end of February.

## IV.   CONCLUSION

WHEREFORE Mr. Benns respectfully requests that the Court grant this motion, and reduce his sentence to time served.

December 23, 2022

Respectfully submitted,

Douglas Benns, Defendant,


s/ Johanes Maliza
Johanes Christian Maliza (86875)
BENESCH FRIEDLANDER COPLAN &
ARONOFF, LLP
200 Public Square, Suite 2300
Cleveland, OH  44114-2378
Phone          (216) 363-4500
Fax:             (216) 363-4588
Email:          jmaliza@beneschlaw.com


*Attorney for Defendant*

**CERTIFICATE OF SERVICE**

I certify that on December 23, 2022, the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

s/ Johanes Maliza
*Attorney for Defendant*
